```
              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF FLORIDA

           CASE NO. 06-20286-CR-GOLD/BANDSTRA
```

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

LOUIS S. ROBLES,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendant Louis S. Robles' Motion to Suppress Fruits of Unlawful Search and Seizure of Computer Files (D.E. 35) filed on January 31, 2007. On February 5, 2007, this motion was referred to the undersigned by the Honorable Alan S. Gold for appropriate proceedings pursuant to 28 U.S.C. § 636(b). Accordingly, the undersigned conducted an evidentiary hearing on this motion on March 14, 2007. Based on the facts as found herein and applicable law, the undersigned recommends that defendant's motion to suppress be DENIED.

**FINDINGS OF FACT**[1]

A.  <u>The Florida Bar Disciplinary Proceedings</u>

On May 16, 2001, The Florida Bar filed a complaint against Louis Steven Robles, defendant herein, alleging, *inter alia*, defendant's representation of approximately 7,000 plaintiffs throughout the United States in asbestos product liability litigation (Fla. Bar Cpt., ¶¶ 2, 5); defendant's failure to provide itemized, individual statements for his legal services performed on behalf of these clients (Fla. Bar Cpt, ¶¶ 14,27,43 and elsewhere); defendant's failure to separately itemize costs charged to his clients (Fla. Bar Cpt. ¶¶ 16, 31, 44 and elsewhere); and defendant's charging clients for costs not incurred as well as accrued interest on such costs without reasonable notice and without a detailed accounting or explanation of such costs and interest charges (Fla. Bar Cpt. ¶¶ 16, 31, 44, and elsewhere). The Florida Bar complaint further alleged that defendant, as respondent in the disciplinary proceedings, misrepresented the complexity of discovery, his participation in court proceedings, and other procedural matters thereby creating "extra expenses" which were

---

[1] These factual findings are based on the testimony of Thomas Tew, Esq., the court-appointed "inventory attorney" in The Florida Bar disciplinary proceedings involving defendant, as well as documents submitted by the government in opposition to defendant's motion to suppress evidence.  Defendant called no witnesses and introduced no additional evidence at the suppression hearing.

"intentionally deceptive and misrepresentative of the actual nature of the proceedings" to the direct detriment of defendant's clients (Fla. Bar Cpt., ¶ ¶ 18). The Florida Bar complaint was based on complaints by nine separate clients with total litigation costs exceeding $57,000.00.[2] As a result, The Florida Bar requested that defendant be "appropriately disciplined" in accordance with Chapter 3 of the Rules Regulating The Florida Bar for violating specific rules relating to attorney diligence, an attorney's duty to inform his clients of the state of representation, and to explain matters to clients including the basis of rates and fees; and the prohibition against illegal or excessive fees (Fla. Bar Cpt., ¶ 21, 36, 47 and elsewhere).

On June 18, 2001, the Honorable Joseph P. Farina, Chief Judge of the Eleventh Judicial Circuit, appointed the Honorable Marc Schumacher, Circuit Judge, to serve as referee of The Florida Bar disciplinary proceedings pursuant to authority granted by the Supreme Court of Florida.

On January 14, 2003, defendant, as respondent in the bar proceedings, filed a Petition for Disciplinary Resignation (Gov't. Exh. 7) representing that he wished to resign from The Florida Bar

---

[2] A subsequent investigation by Thomas Tew, Esq., the inventory attorney appointed by the state court, revealed similar misrepresentations of costs and other inappropriate charges to a large number of defendant's former clients which, according to Mr. Tew's testimony, constituted a "theft" in an amount exceeding many millions of dollars.

3

with leave to reapply for admission after a period of five years. In connection therewith, defendant filed an affidavit (Gov't Exh. 8) requesting that Lewis B. Freeman be appointed as "inventory attorney" pursuant to Rule 1-3.8 of the Rules Regulating The Florida Bar.  Defendant agreed to accept no new clients on or after February 13, 2003, and to transfer control of any and all client files to Lewis B. Freeman as inventory attorney who would then contact all clients with pending cases and advise of his appointment and responsibilities as inventory attorney.  Def. Affd., ¶¶ 7-10.

On February 19, 2003, the Supreme Court of Florida granted defendant's petition for emergency suspension despite opposition by The Florida Bar, and immediately suspended defendant from the practice of law in Florida until further order of the Florida Supreme Court.

On February 20, 2003, Chief Judge Farina appointed Thomas Tew, Esq., as inventory attorney for defendant's former clients with full powers and duties of an inventory attorney under Rule 1-3.8 of The Florida Bar.  See Order Appointing Inventory Attorney dated February 20, 2003 (Gov't. Exh. 11).  Mr. Tew was directed to proceed as soon as possible to "inventory all files of Robles and to take such action as seems indicated to protect the interests of all of Robles' clients." Order, ¶ 2.  Mr. Tew was also authorized to accept employment as attorney "in connection with the client

matters found in the files" as long as each client was given a free choice with regard to the further employment of counsel. Order, ¶ 3. Tew was also to furnish periodic progress reports to the state court with copies to The Florida Bar. Order, ¶ 5.

On March 7, 2003, Chief Judge Farina entered a further order, on motion of Mr. Tew, authorizing Tew to retain Lewis B. Freeman to provide accounting and administrative services in connection with the work of Mr. Tew as inventory attorney (Gov't Exh. 12).

B. <u>The Services Provided by Thomas Tew as Inventory Attorney</u>

Following his appointment, Thomas Tew immediately commenced the performance of his duties and responsibilities as inventory attorney. Mr. Tew first familiarized himself with The Florida Bar rules and regulations for the position and carefully reviewed Judge Farina's appointment order setting forth his duties. Mr. Tew realized that he was appointed to safeguard the interests of defendant's former clients, regardless of the particular law firm used by defendant in his prior representation, particularly in view of defendant's suspension from The Florida Bar only a few days earlier. Mr. Tew viewed himself as working solely for these former clients much like a "guardian ad litem" and not as a fiduciary for defendant. Reviewing The Florida Bar's petition for defendant's emergency suspension, Tew realized that defendant likely misappropriated client funds from trust accounts totaling at least

$800,000.00.

Over the following weeks and months, Mr. Tew actively performed his duties as inventory attorney according to the rules and regulations of The Florida Bar and the appointment order of the state court. Within days of his appointment, Mr. Tew visited a warehouse where client files had been relocated along with computers containing data bases and other records formally owned or controlled by defendant. Thomas Tew recognized the haphazard manner in which the client files and related records had been deposited into the warehouse ("a mess"), as well as the need to quickly inventory these files, determine the status of each client's case, and take necessary actions to protect the interests of these clients formerly represented by defendant.

Unfortunately, the client files were mostly contained within numerous cardboard boxes with no clear index or other organization. As a result, Mr. Tew moved the files to available space at or near his office where he set to work reviewing each client file and the status of pending or recently completed litigation. Mr. Tew was assisted in this task by other attorneys and staff in his office, computer personnel previously employed by defendant familiar with the files and computer database, and by the accounting firm of Lewis

B. Freeman on appointment by Chief Judge Farina.

Reviewing client files and the computer database, Mr. Tew determined that each client file reflected that certain litigation costs had been charged to clients without corresponding settlement documents showing monetary distributions to these clients. Mr. Tew reviewed these costs items and determined that some but not all appeared to be reasonable and related to particular litigation. Mr. Tew also determined that as much as $13.5 million in settlement funds had already been received but not distributed to defenant's former clients. Mr. Tew reported this situation to Judge Farina in April 2003, and sought direction from the state court with respect to the proper allegation of costs and the payment of settlements "on hand and to be reached," as well as other matters.

At the same time, Mr. Tew found additional evidence of misconduct including undocumented costs charged to the client files. Specifically, Tew discovered that defendant had made a "post-period adjustment" to the files sometime after September 30, 2006, totaling over $12.0 million, for costs allegedly incurred between 1989 and 2002. This later adjustment, for costs allegedly incurred many years earlier, appeared improper to Mr. Tew when added to the $22.0 million in costs already posted to defendant's former clients. Mr. Tew dutifully reported this to the state court as part of his periodic reporting of his progress.

Throughout this period, Mr. Tew acted pursuant to the state court orders and The Florida Bar rules regulating the duties and responsibilities of an inventory attorney. Prior to his review of client files and report of findings, Mr. Tew was not contacted and had no communication with the Federal Bureau of Investigation, or any other state or federal law enforcement agencies. Mr. Tew also had no communications with any state or federal prosecutors. Thus, no federal or state law enforcement agencies or officers or state or federal prosecutors directed his work as inventory attorney or received reports of his findings or concerns.

On May 13, 2003, defendant was disbarred from the practice of law in Florida on petition of the referee in The Florida Bar disciplinary proceedings. No mention of any findings of the inventory attorney was made in either the report or recommendation for disbarment of the referee or the May 15 Order of disbarment by the Supreme Court of Florida.

On May 20, 2003, defendant moved to disqualify Mr. Tew as inventory attorney alleging, *inter alia*, that he was acting outside the scope of his role as inventory attorney, in conflict with interests of defendant, and with an "obvious appearance of impropriety." Motion to Disqualify, Gov't. Exh. 16. Defendant also complained in his motion that Mr. Tew had been appointed to protect the defendant's interests rather than those of his former clients and that Tew had violated his duties by seeking to prevent

defendant from recovering fees and costs owed by his prior clients. On May 22, 2003, the state court denied defendant's motion finding no merit to his arguments for disqualification.

In or about June or July 2003, defendant was contacted by AUSA Steven Stallings of the United States Attorney's Office in Miami with respect to Tew's investigation and activities as inventory attorney over the past several months. Mr. Tew was never directed in his activities by Mr. Stallings or any other state or federal prosecuting authority. Mr. Tew did have infrequent contact with the federal prosecutor over the next few months but he never received any instructions from the prosecutor with respect to his activities. Mr. Tew always regarded himself as a "guardian" for defendant's former clients rather than a fiduciary for defendant or law enforcement officer.

Mr. Tew also acted independently from The Florida Bar and, at times, in an adversarial capacity. Most notably, Tew first requested and then instigated litigation against The Florida Bar to obtain funds from the Bar's "victims fund" to partially compensate defendant's former clients for their losses. Mr. Tew was not involved in The Florida Bar's disciplinary proceedings against defendant. Mr. Tew received no direction from The Florida Bar or any of its attorneys in his activities as inventory attorney. At most, Tew provided information requested by The Florida Bar prior to defendant's disbarment.

In October 2003, Tew received a federal grand jury subpoena from the United States Attorney's Office requiring him to produce documents obtained as inventory attorney. Mr. Tew responded to the subpoena by producing requested documents and by providing information concerning his interpretation of the meaning of those documents.

In November 2003, Mr. Tew completed his final report to the state court summarizing in detail his investigation and findings as inventory attorney.

In May 2006, a federal grand jury returned the indictment in this case charging defendant with 41 counts of mail fraud in connection with defendant's alleged misappropriation of monies owed to his former clients.

## ANALYSIS

Defendant moves to suppress all evidence obtained by Thomas Tew from client files and computer databases as "fruits of [an] unlawful search and seizure" while Tew acted as inventory attorney. In defendant's view, the government obtained this documentary evidence from Thomas Tew who, "through state action, improperly searched and seized" the materials in violation of his Fourth Amendment privacy interests in his computer files. Motion, pg. 2. Defendant argues that "[t]he actions of Mr. Tew - - acting ostensibly under appointment as `inventory attorney' by a Florida

state circuit court judge, but in actuality proceeding jointly with federal and state law enforcement and prosecutorial agencies - - resulted in the improper seizure of computer-based materials to which Mr. Tew had no right of access or ownership." Motion, pg. 2. Defendant then supports his position with allegations that Mr. Tew was a "government actor" (motion, pg. 8) who was "engaged in close cooperation with state and federal prosecutors" (motion, pg. 4) in "order to pursue a criminal prosecution of the defendant" (motion, pg. 4) which "exceeded the bounds of his authorization" (motion, pg. 6) as inventory attorney. Defendant also charges that Mr. Tew proceeded under the "false premise that he was merely acting as the inventory attorney" (motion, pg. 4) while acting "in coordination with state and federal prosecution entities" (motion, pg. 5) which he failed to disclose in his effort to deceive defendant and his former clients (motion, pg. 6)..

Reviewing the actual facts as found above and applicable law, the undersigned finds no merit whatsoever to defendant's position. First, and factually, there simply is no evidence that Mr. Tew ever acted outside of his authority as court-appointed inventory attorney or made any attempts to deceive defendant, the state court, defendant's former clients, or anyone else as he diligently performed his duties and responsibilities as inventory attorney. Mr. Tew regularly reported his actions and progress to the state court, attending frequent court hearings relevant to his role,

11

while seeking the court's guidance with respect to payments of settlements, allocation of costs, and other matters important to defendant's former clients. Mr. Tew was never appointed to protect the interests of defendant or any of his prior law firms. Rather, Mr. Tew correctly viewed his position as a "guardian" of the rights and interests of the former clients. No evidence establishes or even remotely suggests that Mr. Tew exceeded his court-appointed authority as inventory attorney, engaged in any deception, or violated any duties he owed to the former clients. Mr. Tew correctly perceived that he had no fiduciary duty to defendant himself and needed no "consent" from defendant to perform those duties.

Defendant's allegations concerning Mr. Tew's alleged "joint action," "close cooperation," and "consultation" with state and federal law enforcement authorities "in order to pursue a criminal prosecution" are completely unsupported under the facts of this case. Mr. Tew's clear and uncontroverted testimony reveals that he and those he employed to assist him in his duties acted solely in their role as court-appointed inventory attorney without any input, direction or control from any law enforcement officers or prosecution offices. Mr. Tew was appointed in February 2003 by Chief Judge Farina after which he immediately removed client files, computer databases, and other necessary materials to his office to initiate his duties and responsibilities. No state or federal law

12

enforcement authorities assisted or directed Tew's investigation of those files and computer records or helped him and his crew in formulating the results.  Mr. Tew completed the bulk of his investigation and reached his conclusion that defendant had stolen millions of dollars from his clients well before he had any communication at all with any state or federal prosecution offices or other law enforcement authorities.

Mr. Tew's consultation, communication and request for direction from the state court, or his periodic reports to the court and The Florida Bar, did not constitute "state action" or turn his work into a criminal investigation as alleged in this motion.  Moreover, Mr. Tew's occasional communication with a federal prosecutor sometime in or after April 2003 was not intended by Mr. Tew and did not result in "close cooperation" with any later criminal prosecution.

Defendant's arguments that Mr. Tew engaged in "state action" subject to the requirements of the Fourth Amendment is also wrong as a matter of law.  Federal law addressing this "agent-of-the-government" theory is well established and holds that a search by a private person does not implicate the Fourth Amendment unless that person acts as an instrument or agent of the government. *United States v. Steiger*, 318 F.3d 1039, 1045 (11th Cir. 2003) (*citing United States v. Ford*, 765 F.2d 1088, 1090 (11th Cir. 1985)).  "For a private person to be considered an agent of the

13

government, we look to two critical factors: (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends." *Id.* (*citing United States v. Simpson*, 904 F.2d 607, 610 (11th Cir. 1990)). Both prongs must be satisfied before the private search may be deemed a government search. *United States v. Souza*, 223 F.3d 1197, 1201 (10th Cir. 2000). Thus, the Fourth Amendment does not apply to searches by private parties absent government involvement in the search. Id. at 1201. A search by a private party only becomes a government search "if the government coerces, dominates or directs the actions of the private person" that is conducting the search. *Id.* (*citing Pleasant v. Lowell*, 876 F.2d 787, 796 (10th Cir. 1989)).

Reviewing the facts here, the undersigned finds that defendant establishes neither of the two requirements for a government search. First, the facts establish that Thomas Tew was appointed inventory attorney and conducted his review of the client's files in February 2003 without any prior contact or involvement with any state or federal law enforcement authorities. Mr. Tew testified that he acted solely pursuant to the authority and direction of the state court and Florida Bar rules and regulations in the performance of his duties. Mr. Tew's appointment by the state court and the governance of his duties by that court and the bar

rules certainly did not turn his work into "state action" as argued in this motion. Moreover, no government authority - - including the state court or The Florida Bar - - coerced, dominated or controlled Tew's actions as required for a government search. In fact, no authorities, including any state or federal prosecution offices, even knew about his inventory and examination of client files until he reported his findings to the state court in or about April 2003.

As already stated, "the police 'must instigate, orchestrate, encourage or exceed the scope of the private search to trigger the application of the Fourth Amendment'". *Souza*, 223 F.3d at 1201 - 02 (*citing United States v. Smythe*, 84 F.3d 1240, 1243 (10th Cir. 1986)). This never happened here. Moreover, no evidence even suggests that Thomas Tew performed his work in order to assist law enforcement authorities rather than to protect the interests of defendant's former clients. Even knowledge of Tew's activities by law enforcement authorities, had such knowledge existed, would not create a government search under the circumstances of this case. *See Smythe*, 84 F.3d 1243 (if a government agent is involved "merely as a witness" the requisite government action is absent and the search will be deemed  private).

## SUMMARY AND RECOMMENDATION

In summary, the undersigned concludes that Mr. Tew acted

strictly in his "private" capacity as inventory attorney - - rather than as a "government actor". Thus, no Fourth Amendment rights were implicated or violated in the performance of his duties. Defendant's attempts to link Mr. Tew's work with the subsequent criminal investigation and the charges in this case is simply not supported by the facts or well-established law. Accordingly, the undersigned recommends that Defendant Louis Robles' Motion to Suppress Fruits of Unlawful Search and Seizure of Computer Files be DENIED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable Alan S. Gold, United States District Judge, within ten (10) days of the receipt. See 28 U.S.C. § 636(b)(1)(c); United States v. Warren, 687 F.2d 347 (11th Cir. 1982), cert. denied, 460 U.S. 1087 (1983); Hardin v. Wainwright, 678 F.2d 589 (5th Cir. Unit B 1982); see also Thomas v. Arn, 474 U.S. 140 (1985).

RESPECTFULLY SUBMITTED at Miami, Florida this 12䷁ day of April, 2007.

_____
Ted E. Bandstra
Chief United States Magistrate Judge

Copies furnished to:
Honorable Alan S. Gold
All counsel of record