UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 06-20286-CR-GOLD/BANDSTRA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

LOUIS S. ROBLES,

      Defendant.

_____ /

## ORDER AFFIRMING AND ADOPTING REPORT AND RECOMMENDATION

This Matter is before the Court on Defendant, Louis S. Robles' "Objections to Report and Recommendation" **[D.E. # 83]** of Chief Magistrate Ted E. Bandstra, dated April 12, 2007 **[D.E. # 76]** ("Report"). The Report recommended that the Defendant's "Motion to Suppress Fruits of Unlawful Search and Seizure of Computer Files"    **[D.E. # 35]** be denied. The Chief Magistrate Judge concluded that Thomas Tew, as the "Inventory Attorney" appointed by the Florida Bar, "... acted in his 'private' capacity as inventory attorney – rather than as a 'government actor.'" Accordingly, "[n]o Fourth Amendment rights were implicated or violated in the performance of his duties." The Chief Magistrate Judge further concluded that: "Defendant's attempts to link Mr. Tew's work with the subsequent criminal investigation and the charges in this case is simply not supported by the facts or well-established law." **[Report, pages 15-16]**. Following *de novo* review, and oral argument on Friday, August 17, 2007, I **affirm** and **adopt** the Chief Magistrate Judge's

1

well-reasoned Report. In addition, I enter my own findings and conclusions, as set forth below.

The Chief Magistrate Judge conducted an evidentiary hearing on the Defendant's motion on March 14, 2007 (following referral by the Court). In the Report, the Chief Magistrate Judge entered complete findings of fact based on the testimony of Thomas Tew, Esq., as well as documents submitted by the Government in opposition to the Defendant's motion to suppress evidence. **Report, page 2 n.1**. The Defendant engaged in full cross-examination of Thomas Tew, but called no witnesses and introduced no additional evidence at the suppression hearing.

At the suppression hearing, the Defendant provided two "exceeding scope of authority" arguments in support of his motion:

> *First*, he contended that the inventory attorney, C. Thomas Tew, who was appointed by the Chief Judge of the Circuit Court of the Eleventh Judicial Circuit, in and for Miami Dade County, Florida, did not have authority to review the client files the defendant had deposited in a warehouse, because at that time the defendant had "no clients," as he claimed to have quit practicing law by then-apparently just before the Supreme Court of Florida suspended him on an emergency basis. Thus, the defendant claimed that when Tew was appointed by the court "to protect the interests of all of Robles' clients," the appointment did not apply to the more than 10,000 clients' files he had left in the warehouse because they were "not clients of Robles personally." (Motion at 2).

> *Second,* he argued that Tew did not have the authority to use the computers at that warehouse-which contained critical client data on a database, such as settlement histories, client cost ledgers, client contact information, exposure histories, and case statutes-because those computers and servers were owned by another company. As such, the defendant argued that he did not "as an attorney-personally control the client computer files that were leased by the law firm." *Id.*

In response to these arguments, the Government noted that none of these

challenges were made by the Defendant to Mr. Tew at the time of his appointment, and, in any event, that the procedural background and review of the Circuit Court's February 20, 2003 Order appointing Mr. Tew established that his conduct was well within the scope of the authority granted to him by the state court, and the order, which commanded him to "proceed as soon as possible [to] inventory all files of Robles," gave him the necessary authority to access those files. **[Government's Ex. 11]**.

Moreover, the Government also raised a more fundamental response: *Thomas Tew was not a state actor and thus there was no basis for the suppression of evidence against the Government.* Thus, the Government argued, even if Mr. Tew were to have exceeded his authority (which the Government claimed he did not), or otherwise acted inappropriately, such purported constitutional violations can only apply against the Government, not private actors. Because Mr. Tew was not a state actor, such claimed violation, argued the Government, cannot be asserted against it. This fundamental prong of the Government's argument then became the crux of Chief Magistrate Bandstra's Report. The Government points out that nowhere in the initial ten-page motion did the Defendant challenge Mr. Tew's *authority* to actually inventory the files. Rather, the challenge was to *the scope* of which files Mr. Tew was given permission to inventory and whether Mr. Tew could use the computers to conduct the inventory.

Notwithstanding, in its twenty-page Objection to the Report, the Defendant now asserts an entirely different claim arguing that the basis for the suppression was a "warrantless seizure and search of Robles' financial records." **[Objection, at page 3]**. More specifically, the Defendant now argues with respect to the factual and legal issue of

state action that the Magistrate Judge's Report "suffers from three principal defects:"

> (1)   Contrary to the Magistrate Judge's determination, the state action doctrine for Fourth Amendment analysis is not limited to actions directed by criminal prosecutors and police officers, but also includes other government regulatory actions, including court enforcement of Florida Bar Regulations;

> (2) The Magistrate Judge's conclusion that Tew's subjective perception of his authority as extending to a "guardianship" of the clients in some way undermines the state action role he performed I this case and the misplaced analogy to client "guardianship," in any event, does not diminish the state action involved in the seizure of Robles' property; and

> (3) The Magistrate Judge failed to consider and place in context the regulatory, disciplinary, and criminal proceedings leading to Tew's appointment and in which Tew participated thereafter as part of his appointment-pursuant to which not only Tew, but other members of his firm were involved (and for which they sought and obtained reimbursement as part of their duties under the court appointment)- where such circumstances are clearly relevant to state regulatory investigative actions undertaken by Tew in this case, particularly in that Tew's actions were involuntary as to both Robles and the individual clients, and were taken without any notice to the clients.

Upon *de novo* review, I conclude that none of these claims has merit and none is supported by the record. Of importance, the Defendant had initially claimed that Mr. Tew's inventory of Robles' files was done "in close cooperation with state and federal prosecutors" and was undertaken "jointly with federal and state law enforcement and prosecutorial agencies." The clear weight of the evidence supports Chief Magistrate Judge's findings that Robles' argument totally lacks factual merit. To the contrary, Chief Magistrate Judge Bandstra specifically found that: "the facts establish that Thomas Tew was appointed Inventory Attorney and conducted his review of the client's files in February 2003 without any prior contact or involvement with any state or federal law enforcement authorities." **Report, at page 14**. He further found that: "No federal or state law

enforcement agencies or officers or state of federal prosecutors directed his work as inventory attorney or received reports of his findings or concerns." **Report, at page 8**. The record evidence unequivocally supports these findings.

In his objections, the Defendant argues that Judge Bandstra focused only on contact between Tew and law enforcement authorities, thereby implying that Judge Bandstra did so in order to ignore other contacts between members of Mr. Tew's law firm and such authorities prior to the report revealing the purported $13.5 million misappropriation (Obj. at 4-5 ["The magistrate relies on the absence of evidence that Tew himself, as opposed to members of his firm serving as counsel to the inventory attorney, had direct 'communications with any state or federal prosecutors' before submitting to the state court his reports alleging fraud by Robles."]). The evidence supports that the report was filed on April 15, 2003. However, the Defendant is patently wrong. The uncontradicted evidence supports that the earliest contact shown between *anyone* at Mr. Tew's law office and *any* law enforcement authority is May 14, 2003-nearly a month after the report was publicly filed (Tr. at 87-88).

The Chief Magistrate Judge properly applied the Eleventh Circuit test enunciated in *United States v. Simpson,* 904 F.2d 607 (11th Cir. 1990) and in *United States v. Steiger,* 381 F.3d 1039, 1045 (11th Cir. 2003)[1], for evaluating when a private person is considered

---

[1]

The Eleventh Circuit has held that: "A search by a private persons does not implicate the Fourth Amendment unless he acts an instrument or agent of the government. For a private person to be considered an agent of the government, we look to two critical factors: (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends." (citations omitted). *Steiger,* 381 F.3d at 1045.

to be an agent of the government, Judge Bandstra correctly found that Mr. Tew did not act as an instrument or agent of the government. Furthermore, my own *de novo* review of the record supports that neither state nor federal prosecutors nor law enforcement had any pre-knowledge of Mr. Tew's search or that any agent openly encouraged or cooperated in the search. *Id.* at 1045.

Next, apparently recognizing that Judge Bandstra's findings are well-supported, the Defendant now contends, in its objections, that Mr. Tew "served in an investigatory capacity" for The Florida Bar. (Obj. at 2-3). In essence, the Defendant claims that because the appointment of an Inventory Attorney was made at The Florida Bar's request, and because Mr. Tew had regular communications with the Bar, which were not immediately adverse in nature, Mr. Tew was the Bar's investigator for its on-going disciplinary investigation of the defendant. (Obj. at 3). From this premise, Robles further argues that since The Florida Bar is a "state actor" and Mr. Tew was acting as an extension of the Bar, he is, therefore, a state actor. (Obj. at 18 ["The state's regulatory procedures and orders in this case made Tew a state actor in pursuing Robles."]).

To begin with, the record fails to support, as the Defendant suggests, that there were "criminal proceedings leading to Tew's appointment" that Judge Bandstra "failed to consider," and that The Florida Bar requested Tew's "appointment due to criminal allegations" (Obj. at 14). To the contrary, on *de novo* review, I conclude that the record establishes that there were no criminal proceedings against Robles at the time Mr. Tew discovered Robles' purported theft of $13.5 million, and that the appointment of an Inventory Attorney was as the result of the defendant's suspension, not some nonexistent

6

criminal proceedings or claimed criminal allegations. It was not until after the discovery of the purported theft that Mr. Tew was later contacted by law enforcement and served with a grand jury subpoena.

While it has been recognized that The Florida Bar is a "state agency" for Eleventh Amendment purposes, See *Kaimowitz v. The Florida Bar*, 996 F.2d 1151, 1155 (11th Cir. 1993), Mr. Tew did not act as a "government agent" for The Florida Bar, and, in any event, at the time of the search in question, The Florida Bar itself was not acting to assist law enforcement or prosecutors' efforts.   It does not follow that because Mr. Tew was appointed as inventory attorney under The Florida Bar Rules, he himself was *per se* a "government agent" under the *Steiger* formulation of the applicable test. Rather, that test, as formulated in the opinion, is expressed in terms of the private actor's relation to "the government." This means it applies to government prosecutors and law enforcement agencies. The police or prosecutors must "instigate, orchestrate, encourage or exceed the scope of the private search to trigger application of the Fourth Amendment." *United States v. Souza*, 223 F.3d 1197, 1201-02 (9th Cir. 2000); see *United States v. Ford*, 765 F.2d 1088 1090 (11th Cir. 1985)(holding that the district court properly denied motion to suppress where there was no evidence that the government "had any pre-knowledge of the search [or] that the agents openly encouraged or cooperated in the search"). The Defendant has not cited to any case or authority under which Fourth Amendment constitutional restrictions on searches has been applied to The Florida Bar, or any bar association, as a state actor, let alone to an "Inventory Attorney" appointed to protect the interests of the disbarred

7

attorney's clients.[2]

There may be some hypothetical circumstance where The Florida Bar, or any other Bar Association, in some manner, may be an instrument or agent of the government for Fourth Amendment purposes. This may happen where the Bar, through its representatives, is colluding with a prosecutor or working with law enforcement in conjunction with criminal proceedings underway at the time of the disbarment proceedings. Compare Polk County v. Dodson, 454 U.S. 312, 325 (1981)(appointed defense attorney, absent a conspiracy with state actors, is not a state actor). However, the mere fact that an Inventory Attorney is appointed by the Bar in a given case does not mean that he or she is a "Bar investigator" by another name. Rather, as The Florida Bar Rules make clear, this procedure exists so that the courts can assign a citizen to protect the interests of the clients.

Thus, while The Florida Bar did request the Supreme Court of Florida to appoint an

---

[2]

The Defendant cites to *Alexander v. The Florida Bar*, Case No. 06-20046-CIV-HUNT, United States District Court, Southern District of Florida (appeal pending to the Eleventh Circuit), for the proposition that The Florida Bar itself was responsible for Mr. Tew's appointment as Inventory Attorney in this case, and that Mr. Tew was not counsel for, and did not represent, Robles or his clients. (Obj. at 8). The District Judge found in a footnote in his Order that "Tew's appointment as Inventory Attorney provided him with the opportunity to accept employment as a personal attorney for matters discovered in his investigation, but the decision whether to employ him for such purposes resided with his clients. The Bar represents that Tew submitted the letter claim on behalf of Robles' clients, even though he admittedly was not authorized to represent all of those individuals." [D.E. # 38, page 2 of the Order].

This case involved a class action brought by Mr. Tew on behalf of Robles' former clients challenging the denial of certain claims filed with the Bar's Clients' Security Fund. The Order grants the Bar's motion to dismiss. It serves as no useful precedent here. While Mr. Tew may not have been directly authorized by all of those individuals to bring the class action, it does not mean that Mr. Tew, under the Bar rules and the Circuit Court order appointing him, was not appointed to "protect the interests" of Robles' clients.

Inventory Attorney when the Bar was requesting that the Defendant be suspended, the actual appointment was made, in accordance with The Florida Bar Rules, by the **circuit court** "to inventory the files of the subject attorney ... and to take such action as seems indicated to protect the interests of the subject attorney." *Florida Bar Rule 1-3.8(a)*. Here, Mr. Tew was appointed by the Chief Judge of the Miami-Dade Circuit Court and was directed to proceed as soon as possible to "inventory all files of Robles and to take such action as seems indicated to protect the interests of Robles' clients." **[Order Appointing Inventory Attorney, February 20, 2003, Government's Exhibit 11]** .[3] In summary, Mr. Tew was appointed and compensated by the state court and his conduct was overseen by the state court, but the intended benefits of Rule 1-2.8 and Mr. Tew's duty flowed directly to Robles' former clients. The Florida Bar Rules explicitly state that: "Nothing herein creates any attorney and client, fiduciary, or other relationship between the inventory

---

[3]

As noted in Judge Sharp's dissenting opinion in *Christenson v. Correa*, 673 So.2d 145 (5th DCA 1966)(dissent on other grounds), with which I concur, "Rule 1-3.8(b) does not require the inventory attorney to obtain the consent of the suspended attorney before disclosing information contained in the former client's files. **Although an inventory attorney is authorized to take whatever action is necessary to protect the interests of the suspended attorney and his former clients, this dual responsibility does not create a confidential relationship between the inventory attorney and the suspended attorney. The fiduciary duties owed by the inventory attorney to the suspended attorney include the exercise of due diligence in assisting the former clients, and the appropriate handling of the clients' funds or accounts formerly under the control of the suspended attorney. By reviewing the files and assisting the former clients, the inventory attorney protects the interests of the suspended attorney, as well, by preventing further exposure to liability for professional malpractice.** However, the inventory attorney is not appointed to give legal advice to the suspended attorney, or represent him in any legal matters." (emphasis added)

attorney and the subject attorney." *Florida Bar Rule 1-3.8 ( c).* Rather, *"the purpose of appointing an inventory attorney is to avoid prejudice to clients of the subject attorney*[4] and, as a secondary result, prevent or reduce claims against the subject attorney for such prejudice as may otherwise occur." *Id.* (emphasis added). The fact that it is the "circuit court" that appoints the inventory attorney, and requires the inventory attorney to report to it, further substantiates that the inventory attorney is *independent* of The Florida Bar. His or her role is to pursue the interests of the "subject attorney's" former clients. He or she is not appointed as an attorney to represent The Florida Bar.

Because there are no cases which have discussed the role of an Inventory Attorney as a "government agent,"[5] Judge Bandstra was correct in his Report to reference Mr. Tew's

---

[4]

The Defendant argues in his "Reply to Government's Response to Objections" **[D.E. # 92]**, that "the Government's argument rests on a misapprehension of the status of a Florida Inventory Attorney, who is never considered to be the attorney for, or representative of, any party or client in regard to the inventory of files." The Defendant further argues that the clients were not even advised of the inventory until after it was completed. These arguments simply misapprehend the purpose of the Bar rule. Mr. Tew was exercising his duty as an inventory attorney by doing an inventory of Robles' files to protect the interests of Robles' clients and to avoid prejudice to those clients.

[5]

The Defendant argues that Mr. Tew was not operating as a "private citizen" because of his appointment by the circuit court under the Florida Bar Rules. This argument again misses the essential point. The "private" nature of Mr. Tew's position has to do with the fact that there is nothing in the record which supports that Government agents advised him to conduct the subject search. No Government agent knew of the search until after it had occurred. The search was initiated by Mr. Tew, as Inventory Attorney, in the normal course of his duties, for the sole purpose of protecting Robles' clients.

Although the Defendant claims state involvement by virtue of the Florida Bar Rules and appoint by the Circuit Court, these circumstances *alone* do not turn Mr. Tew into a "government agent" at the time of the search. Mr. Tew's circumstances here are no more compelling than those in *United States v. Simpson*, 904 F.2d 607 (11th Cir. 1990), where a search by a Federal Express

own view of his role as a "guardian" for Robles' clients rather than as a fiduciary for Robles or for any law enforcement officer. **Report, at 9**. The record firmly supports Judge Bandstra's findings that Mr. Tew acted independently from The Florida Bar and, at times, in an adversarial capacity; that he received no direction from The Florida Bar or any of its attorneys in his activities as inventory attorney, and, at most, merely provided information requested by The Florida Bar prior to Robles' disbarment. While Mr. Tew was not strictly a guardian *ad litem*, the core attributes are similar when it comes to a state-action analysis: an Inventory Attorney's duty is owed to the clients whose interests he is duty bound to protect and because of that central duty, he is independent, even from the court that appointed him.

Judge Bandstra's factual findings were correct and well-supported. Mr. Tew's duties ran to Robles' clients to protect their interests, not the interests of the Bar, the court, or any law enforcement agency. On *de novo* review, I find no close nexus between the state and the challenged action that seemingly private behavior may be fairly treated as

---

employee was held not to violate the Fourth Amendment. In that case the Federal Express employee, prior to his employment, served as a police officer and was familiar with members of the United States Attorney's Office. The Eleventh Circuit held that these facts, without more, do not establish that the private party acted as an agent of the Government at the time of the search. *Id.* at 609. In addition, Federal Express employees had received training by Government law enforcement officers on when to contact Government agents after contraband had been discovered. *Id.* at 610. The Eleventh Circuit emphasized that **it was not the "employment status"** *per se* that controlled, but whether the Government knew of the intrusive conduct, and whether the private actor's purpose was to assist law enforcement or to further other law enforcement ends. *Id.* Here, Mr. Tew was operating in a "private capacity" because there was no nexus with government law enforcement agents and prosecutors. The inventory was a necessary means to protect Robles' clients and to seek recovery for them from the Bar's Victim Fund. It matters not for Fourth Amendment analysis whether he served as their "actual counsel" so long as he was acting in their interest. His function was "private" because there was no nexus with government law enforcement agents and prosecutors.

that of the state itself.[6]



**WHEREFORE,** it is **ORDERED** that the Defendant's "Objections to Report and Report

_____

[6]

The Defendant requests that I hold a second evidentiary hearing. I find no convincing reason to do so. I conclude that Judge Bandstra's May 22, 2007 Report resolves the Defendant's entire motion to suppress without need to reach any other issues beyond whether Mr. Tew was a state actor. The Defendant was given a full and complete opportunity to cross-examine Mr. Tew on the issue and to otherwise present evidence. The Defendant chose not to do so, which is his right. He cannot second guess his decision, and request an new hearing, merely because I review his objections _de novo_.

Even if I disagreed with Judge Bandstra's state-action analysis, which I clearly do not, I would still deny the Defendant's motion entirely on two separate and independent bases raised by the Government at the March 14, 2007 evidentiary hearing. The record before me amply supports that the Defendant lacks standing because the files and the database were the property of third parties, Louis S. Robles, P.A., the Robles Law Center, P.A., and Robles Technologies, and thus not the property of the Defendant individually.

Furthermore, even if the Defendant had standing, I conclude that he had no reasonable expectation of privacy. See _United States v. Katz_, 389 U.S. 347, 361 (1967)(To have an expectation of privacy, an individual must have an actual subjective expectation of privacy, which is demonstrated by action taken to keep objects, activities, or statements private; and society must be prepared to recognize that expectation as objectively reasonable). Here, as an attorney in the State of Florida, Robles could not have had a subjectively or objectively reasonable expectation of privacy in the contents of his clients' files or the information contained in his DataEase database. The operative documents that bear on the purported fraud in this case were publically-filed pleadings, the letters and release agreements that were sent to his clients and the corporate defendants, and the client ledgers, which were provided to clients upon request or when settlement disbursements were made. It is the clients, and not Robles, who have rights relative to the papers and property held by their attorney. In addition, The Florida Bar has the right to conduct audits of trust accounts in certain situations that directly counters any assertion that a lawyer has a reasonable expectation or privacy in the contents of his clients ledgers, that is, the DataEase database in this case. See _Florida Bar Rule 5-1.2_ (dealing with trust account records and procedures). Also, it is of some import to note that Robles did not argue to the state court at the time that the inventory was done by Mr. Tew that such inventory and search violated his Fourth Amendment rights.

and Recommendation" **[D.E. # 83]** are **DENIED**. Upon *de novo*, the Chief Magistrate

Judge's Report and Recommendation are **ADOPTED** and **AFFIRMED** for the reasons set

forth in this Order.

ORDERED this ⧸⧹ day of August 2007.

Alan S. Gold
United States District Court Judge

c.c.
Chief Magistrate Judge Ted E. Bandstra
Counsel of record