UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 06-20286-CR-GOLD/GOODMAN

UNITED STATES OF AMERICA

vs.

LOUIS S. ROBLES,

    Defendant.

_____/

REPORT AND RECOMMENDATIONS

ON GOVERNMENT'S MOTION TO TRANSFER FUNDS

    This Cause is before the Undersigned on the District Court's referral of the Government's Motion to Transfer Funds to Restitution Fund. [ECF Nos. 166; 167]. The Undersigned has reviewed the Government's motion, Defendant Louis S. Robles' ("Robles") response in opposition [ECF No. 168], the Government's reply [ECF No. 169], and the pertinent portions of the record.[1] The Undersigned **respectfully recommends** that the District Court **grant** the Government's motion.

I.     BACKGROUND

    On September 18, 2007, Robles pled guilty to mail fraud. [ECF No. 130]. As part of his plea, Robles signed a letter agreement (the "Letter Agreement") that requires

---

[1]     The Undersigned struck Robles' sur-reply [ECF No. 172] for violating the Local Rules. [ECF No. 173]. The Undersigned also denied Robles' motion for reconsideration [ECF No. 174] of the Undersigned's order. [ECF No. 176].

Robles to make all his property "(whether held in trust or any other form) that is in the possession of any . . . entity" available as partial satisfaction of any restitution order. [ECF No. 168, pp. 15-16]. The Letter Agreement provided that Robles was relinquishing his rights to any property held on his behalf by Greenberg Traurig, LLP ("GT"). [*Id.*]. On December 5, 2007, Robles was sentenced to 180 months in prison and was ordered to pay $13,522,159.92 in restitution. [ECF No. 143].

In early-to-mid 2008, at the Government's email request, GT transferred $53,957.82 from the $123,605.58 it was holding in its trust account for Robles, GT's former client. [*See* ECF No. 168, pp. 10-14]. The remaining $69,957.76 was retained by GT for its fees. [*Id.*].

On April 23, 2013, the Government filed the instant motion[2] seeking an order requiring GT to transfer $4,953.46 it is holding in its trust account for Robles for payment toward Robles' restitution. [ECF No. 166]. The $4,953.46 represents the interest earned on the $123,605.58 GT previously held.

Robles opposes the Government's request for several reasons. [ECF No. 168]. First, he argues that the Government has failed to show that the $123,605.58, which generated the $4,953.46, is traceable to his criminal acts. [*Id.* at pp. 1-2]. Second, according to Robles, the restitution order only makes him a guarantor of Louis S.

---

[2] The Government does not explain why it now needs a court order to have GT transfer the $4,953.46 when it earlier obtained almost $54,000 from GT by sending an email request.

Robles, P.A.'s (the "Firm") obligation to pay the restitution amount. Thus, because the Firm is in bankruptcy and a bankruptcy order provides that the Firm will receive money from the settlement of asbestos claims, the restitution order should be satisfied from those future settlement funds – not from the instant funds. [*Id.* at pp. 2-6]. Third, the inclusion of the interest generated from the $123,605.58 in GT's trust account was not intended to be included in the Letter Agreement. Fourth,[3] the restitution order limits Robles' restitution to $25.00 quarterly payments from his non-UNICOR job. [ECF No. 172].

## II.   DISCUSSION

### A.  General Legal Principles

A restitution order is enforced pursuant to the provisions of 18 U.S.C. § 3664. That statute provides that the Government may proceed under 18 U.S.C. § 3571, *et seq.*, or 18 U.S.C. § 3611, *et seq.*, or by all other available and reasonable means. *See* 18 U.S.C. § 3664(m)(1)(A). One of those available and reasonable means is 18 U.S.C. § 3613. *See* 18 U.S.C. § 3613(f); *United States v. Scarboro*, 352 F. Supp. 2d 714, 716 (E.D. Va. 2005).

Under 18 U.S.C. § 3613(a), the Government may enforce a restitution order like it would a civil judgment and a restitution order "may be enforced against all property or rights to property of the" defendant, except certain exempt property. To enforce a

---

[3]   This fourth argument appears in Robles' sur-reply, which the Undersigned struck. [ECF Nos. 173; 176]. Nevertheless, the Undersigned will address this argument in an abundance of caution.

restitution order, the Government may file a motion in the defendant's criminal case. *Scarboro,* 352 F. Supp. 2d at 716; *U.S. v. Mays,* 430 F.3d 963, 966 (9th Cir. 2005) (agreeing with *Scarboro*).

**B. Analysis**

As a threshold matter, the Undersigned notes that no party disputes that the $4,953.46 is in fact Robles' property. *See generally* R. Regulating Fla. Bar 5-1.1. The Undersigned will now analyze Robles' arguments.

1. The $4,953.46 is not Traceable to his Criminal Conduct

Robles' first argument is that the Government has failed to show that the $123,605.58 which generated the $4,953.46 is traceable to his criminal conduct. [ECF No. 168, pp. 1-2]. According to Robles, because the Government has failed to make this showing it is not entitled to have GT transfer the $4,953.46.

The inherent assumption in Robles' argument is that the Government is required to show that the $4,953.46 is somehow traceable to his criminal conduct. However, Robles has cited to no legal authority which supports this proposition and the Undersigned can find none. To the contrary, the applicable statute, 18 U.S.C. § 3613, contains no such limitation and restitution is routinely collected from sources which are completely unrelated to the defendant's underlying criminal conviction. *See, e.g., United States v. Midgett,* No. 3:99CR181-1, 2006 WL 517661 (W.D.N.C. Mar. 1, 2006) (ordering law firm to transfer proceeds from defendant's civil lawsuit settlement to the clerk of

4

court, where defendant was convicted for bank robbery); *United States v. Pickett*, 505 F. App'x 838, 839 (11th Cir. 2013) (affirming denial of defendant's motion to enjoin offset of social security benefits against restitution owed from underlying criminal conviction for Medicare, Medicaid, and mail fraud); *United States v. Novak*, 476 F.3d 1041 (9th Cir. 2007) (enforcing writ of garnishment against defendant's ERISA pension plan where defendant was convicted for conspiracy to transport stolen goods). As a result, the Undersigned rejects this argument.

2.  The Restitution Funds Should be Taken out of the Firm's Bankruptcy

Robles' second argument is that under the restitution order the Firm is primarily responsible for paying the restitution and that he is only the guarantor. Therefore, Robles argues that because a bankruptcy order provides that the Firm will receive money from the settlement of asbestos claims, the restitution order should be satisfied from those settlement funds – not from the instant funds. [ECF No. 168, pp. 2-6].

The restitution order is clear that the restitution amount is owed by Robles, personally. [ECF No. 143, p. 5]. In fact, contrary to Robles' claims, the restitution order neither mentions nor refers to the Firm. [*see generally* ECF No. 143]. To be sure, Robles' plea agreement provides that the Government will recommend that the restitution *he* owes be offset by payments from the Firm's bankruptcy estate to the victims. [ECF No. 128, p. 6]. But that does not mean that Robles is not liable for the restitution amount.

5

Rather, all that Robles is entitled to is an offset from the compensation the victims receive from the Firm's bankruptcy estate.

        3.   <u>The $4,953.46 was not Intended to be Included in the Letter Agreement</u>

Robles' third argument is that when he signed the Letter Agreement he did not know about the $4,953.46 and, therefore, he did not intend to relinquish his right to that property. [ECF No. 168, p. 2]. Robles' argument is without any factual or legal basis.

First, the Letter Agreement specifically states that Robles is relinquishing his rights to "all property held on his behalf by GT . . . ." [ECF No. 168, p. 15]. Moreover, the Letter Agreement and his plea agreement provide that Robles will make "all property of the defendant (whether held in trust or any other form) that is in the possession of any . . . entity" available as partial satisfaction of the restitution order. [ECF Nos. 128, p. 6; 168, p. 15]. No party disputes that the $4,953.46 is Robles' property. Thus, regardless of his *subjective* intent, the Letter Agreement and plea agreement make clear that Robles has relinquished any right to his property held at GT – including the $4,953.46.

Second, even if the Letter Agreement did not include the $4,953.46 (which it does), the Government may nonetheless enforce the restitution order against the $4,953.46. Under 18 U.S.C. § 3613, unless certain limited exceptions apply, "all property of a defendant is subject to execution by the government for payment of restitution and

6

assessments." *Midgett*, 2006 WL 517661, at *1. Because the $4,953.46 is Robles' property, the Government may execute against it for payment of Robles' outstanding restitution.

### 4. Robles' Restitution is limited to $25.00 quarterly payments under the Restitution Order

Robles' final argument is that the restitution order limits his restitution payments while incarcerated to $25.00 per quarter from his non-UNICOR job. This argument is without merit.

First, the relevant statutory scheme permits the Government to enforce a restitution order "by all other available and reasonable means," 18 U.S.C. § 3664(m)(1)(A), including "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." 18 U.S.C. § 3613(a). That is precisely what the Government is doing here by seeking an order requiring a transfer of funds held in trust for Robles. *Midgett*, 2006 WL 517661, at *1-2 (Government seeking transfer of settlement funds held in trust by defendant's law firm); *see generally Scarboro*, 352 F. Supp. 2d at 716. Contrary to Robles' assertion, there is nothing in the District Court's restitution order which prohibits this. In fact, the restitution order specifically provides that "[t]hese [scheduled] payments do not preclude the government from using other assets or income of the defendant to satisfy the restitution obligations." [ECF No. 143, p. 5].

Second, courts have considered and rejected the same argument that Robles makes: that periodic payments provided in a restitution order prohibit the

Government's other collection efforts. *See United States v. Ekong*, 518 F.3d 285, 286 (5th Cir. 2007) ("Ekong contends that there was no justification for requiring immediate payment because the criminal judgment specified that restitution be paid in installments. This argument is without merit"); *United States v. Schwartz*, No. 1:09-CR-67, 2011 WL 1544624 (S.D. Ohio Jan. 14, 2011) ("the UNICOR payment schedule does not prohibit garnishment during Schwartz's incarceration") *report and recommendation adopted,* No. CR-1-09-67, 2011 WL 1526929 (S.D. Ohio Apr. 21, 2011) *aff'd,* 503 F. App'x 443 (6th Cir. 2012), *cert. denied,* 133 S. Ct. 1612 (2013); *United States v. Miller*, 588 F. Supp. 2d 789, 796-97 (W.D. Mich. 2008); *United States v. James*, 312 F. Supp. 2d 802, 807 (E.D. Va. 2004) ("the existence of this [payment] schedule does not mean that the government is precluded from pursuing other avenues of ensuring that defendant's restitution obligation is satisfied").

### III.   CONCLUSION

Accordingly, for the reasons stated above, the Undersigned **respectfully recommends** that the District Court **grant** the Government's motion.

### IV.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(a), the Parties have **14** days after being served with a copy of this Report and Recommendations to serve and file written objections, if any, with the District Court. Each Party may file a response to the other Party's objection within **14** days of the objection. The objecting

Party may file a reply within **seven** days. Failure to file timely objections shall bar the Parties from a de novo determination by the District Court of an issue covered in this Report and Recommendations and bar the Parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988).

  **RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, June 28, 2013.

*[signature]*

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
The Honorable Alan S. Gold
All counsel of record
Louis Steven Robles
Reg. #64900-004, FPC Jesup
2659 Hwy. 301 South
Jesup, GA 31599